IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

KAREN HOWDEN WEAVER,

      Plaintiff,

v.                                                      No. CIV-O3-0281 BB/LFG

MARTIN CHAVEZ and
THE CITY OF ALBUQUERQUE,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court for consideration of Defendants Martin Chavez and the City of Albuquerque's Motion for Summary Judgment, filed October 9, 2003 (Doc. 29). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motion will be GRANTED in part, and DENIED in part.

**I.  BACKGROUND**

Plaintiff Karen Howden Weaver ("Weaver") was employed as an Assistant City Attorney in the City of Albuquerque Legal Department for six and a half years. She served at the pleasure of the Mayor of Defendant the City of Albuquerque. In June of 2003 Weaver brought this suit against Mayor Martin Chavez and the City of Albuquerque (collectively "the City") alleging that she was improperly dismissed in July of 2002 in retaliation for her criticism of gender discrimination within the Legal Department, her support of Defendant Chavez' opponent in the 2001 mayoral election and her subsequent criticism of Defendant Chavez' hiring and promotion decisions.

Weaver was hired as an Assistant City Attorney on February 1, 1996. Her duties included providing legal counsel and advice to several City departments, to the Mayor, and to the City Council.

During Defendant Chavez' campaign for Mayor of Albuquerque in 2001, Weaver supported Bob Schwartz, Defendant Chavez' opponent. On the night of the election, Weaver was photographed with Mr. Schwartz and several other supporters in the hotel room where the Schwartz campaign party was held. That photograph was published the next day in a local newspaper.

Prior to taking office, Defendant Chavez requested and received the resignation of all 32 Assistant City Attorneys. Only two of these resignations were accepted. For reasons that are in dispute, Defendant Chavez initially intended to also accept Weaver's resignation. Upon learning she was pregnant, however, he decided that Weaver should be allowed to continue working at the City Legal Department.

In the months that followed, Weaver was openly critical of several personnel changes that were made in the City Legal Department. Specifically, Weaver complained that the hiring or promotion of Victor Valdez, Pete Dinelli and Don Harris were politically motivated decisions directed by Defendant Chavez. Similarly, Weaver was critical of the hiring of Ben Chavez for an Assistant City Attorney position in June of 2002. Weaver had advocated for her friend Rosemary Cosgove to get the position. On June 11, Weaver sent Ms. Cosgove an e-mail suggesting that there were "Marty forced" (referring to the Mayor) decisions made in the hiring process.

That same day, Weaver was present at a meeting at which City Attorney Bob White ("White") indicated that one of the applicants, Ben Chavez, would be starting work in the City

Legal Department on July 1, 2002.  At the time White made this statement, an announcement had not been made at the City Legal Department regarding a new hire, interviews for the position had not been completed, and Ben Chavez had not yet interviewed with the City.  The next day, Weaver was discussing an unrelated matter with Mark Drebing, Ben Chavez' supervisor at the Albuquerque District Attorney's office.  Because she mistakenly believed that Ben Chavez had already been hired at the City Legal Department, Weaver inquired about Ben Chavez' experience.  She was advised that Ben Chavez was relatively inexperienced.  Subsequently, Weaver sent an e-mail to a friend familiar with the City Legal Department who worked at the Attorney General's office implying that Ben Chavez had been hired for political reasons, and expressing her dissatisfaction with what she perceived to be his lack of experience.  The Assistant Attorney General replied that he believed Ben Chavez was a "distant relative of our esteemed Mayor," and facetiously advised Weaver to review the nepotism ordinance.[1]  Weaver circulated this e-mail to four individuals in the City Legal Department.

In response to this e-mail, City Attorney White sent Weaver an e-mail criticizing her for her speculation.   Weaver replied by explaining that she got the impression that Ben Chavez was already hired from White's comment on June 11th.  She also expounded on what she considered the dangers of a "forced hire."  The exchange concluded with White clarifying that no formal offers had been made because the interview process had just concluded, and requesting that Weaver "be more reflective about speculative comments you might make about future colleagues."

---

[1] Ben Chavez is not related to Defendant Chavez.

Shortly after this exchange with White, Weaver was called into her immediate supervisor's office. Weaver's supervisor told her that City Attorney White directed him to warn her to stop talking about Ben Chavez. Weaver complied with this instruction and said nothing further about Ben Chavez. She continued to perform her duties at the City Legal Department without incident for the next six weeks. During this time she was assigned an additional City department to represent.

At the end of July, White met with Defendant Chavez regarding the City Legal Department. One of the topics that was discussed was the events surrounding the hiring of Ben Chavez, and Weaver's criticism. White explained that the issue had become a topic of conversation in the office. The decision was made at this time to dismiss Weaver, and on July 30, 2002 her termination became effective. After her termination, Weaver filed a charge of discrimination with the EEOC alleging that she was discharged because of her gender and in retaliation for complaining about gender discrimination.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999). However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

Summary judgment is inappropriate if disputes remain as to material facts.  *See James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F. 3d 1316, 1319 (10th Cir. 1997).  An issue of fact is "material" if it is essential to the proper disposition of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*.

### III.  DISCUSSION

The City argues that it is entitled to summary judgement on Weaver's First Amendment speech claim, her First Amendment freedom of association claim, and her Title VII gender discrimination claim.  As discussed below, the Court grants summary judgment on the free association claim, but denies summary judgment on the speech and Title VII claims.

### A.  Weaver's First Amendment free speech claim

Weaver claims that the City violated her First Amendment right to free speech by dismissing her in retaliation for her support of Defendant Chavez' opponent in the 2001 mayoral election and her subsequent criticism of Defendant Chavez' hiring and promotion decisions, as well as her criticism of gender discrimination within the Legal Department.  In *Pickering v. Board of Education*, 391 U.S. 563 (1968), the United States Supreme Court established a test for evaluating the claims of public employees who allege that their employers retaliated against them for exercising their First Amendment rights.  *Id*. at 568; *see also Connick v. Myers*, 461 U.S. 138, 142-154 (1983).  To prevail on a *Pickering* claim Weaver must demonstrate that: (1) her speech involved a matter of public concern; (2) her interest in engaging in the speech outweighs the government employer's interest in regulating it; and (3) the speech was a substantial motivating

factor in the adverse employment decision. *Bass v. Richards*, 308 F.3d 1081, 1088 (10th Cir. 2002). If Weaver makes the required showing, the City may still avoid liability if it can show that it would have taken the same action in the absence of the protected speech. *Id*. Whether speech involves a matter of public concern and whether the employee's interest outweighs the employer's are questions of law for the court; whether speech was a substantial motivating factor and whether the employer would have made the same employment decision in the absence of the speech are questions of fact for the jury.[2] *Id*.

The City initially argues that it is entitled to summary judgment as a matter of law on Weaver's First Amendment free speech claim for two reasons: first, her speech was not on a matter of public concern; and, second, even if her speech was on a matter of public concern, the City's interest in dismissing Weaver outweighed her First Amendment interest.

### 1. Weaver's speech involved matters of public concern.

Weaver claims that the City violated her First Amendment rights by dismissing her for her speech on three separate matters of public concern: (1) her support for Bob Schwartz for mayor; (2) her criticism of politically motivated hiring and promotion decisions; and (3) her criticism of gender discrimination within the City Legal Department. The City disagrees and argues that Weaver's speech did not touch upon a matter of public concern because she was merely speaking on a matter of personal interest.

---

[2]At trial, the parties should be prepared to discuss their views on how the *Pickering* balancing test should be submitted to the jury. Specifically, what role does the jury play in the balancing of the employee's First Amendment interest and the employer's efficiency interest? *See, e.g., Jurgensen v. Fairfax County, Va.*, 745 F.2d 868, 881; *Wright v. Illinois Dept. of Children & Family Serv.*, 40 F.3d 1492, 1507 n. 6 (7th Cir. 1994).

Whether an employee's speech involves a matter of public concern is a question of law for the Court. *Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998). Speech involves a matter of public concern when it is "of interest to the community, whether for social, political, or other reasons," rather than a matter of mere personal interest to the speaker. *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1271 (10th Cir. 1998) (internal quotation omitted). In contrast, speech relating to internal personnel disputes and working conditions is not a matter of public concern. *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996). In distinguishing between these two categories of speech, courts must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. A court should also consider "the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to address a broader public purpose [and therefore spoken as a citizen]." *Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994). With these principles in mind, the Court will review Weaver's speech.

### a. Weaver's support of Bob Schwartz for mayor was a matter of public concern.

Weaver contends that her support of Bob Schwartz for Mayor of the City of Albuquerque is speech about a matter of public concern. The City does not directly contradict this contention. Rather, it would analyze Weaver's support for Bob Schwartz as a freedom of association issue and not a free speech issue.

However, participation in a political campaign can be analyzed as both association and speech. Courts have consistently held that support for a political candidate is speech relating to a matter of public concern. *See, e.g., Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995)

("associating with political organizations and campaigning for a political candidate related to a matter of public concern"). For example, in *Bass* a deputy sheriff suffered an adverse employment action after he supported the sheriff's opponent in an election. 308 F.3d at 1084-85. The Tenth Circuit held that the deputy sheriff's support was speech on a matter of public concern. *Id.* at 1089. In the present matter, Weaver held a fund raiser for Schwartz and was photographed at Schwartz' campaign party on election night. Like the actions in *Bass*, Weaver's support for Schwartz constituted speech on a matter of public concern.

As an additional argument, the City contends that there is no nexus between Weaver's support of Schwartz, and her eventual dismissal. It is undisputed, however, that Defendant Chavez was aware of Weaver's support for Schwartz. Pl. Resp., Ex 19 at 20 (Nov. 25, 2003). Moreover, although the reasons are in dispute, the parties agree that Defendant Chavez originally intended to accept Weaver's resignation shortly after taking office, and that he was only deterred when he learned that Weaver was pregnant. Def. Mot. S.J., Ex. B at 19 (Oct. 9, 2003). Even though Weaver was not dismissed until six months later, the temporal proximity between election night and the decision to accept Weaver's resignation suggests a retaliatory intent. *See Marx v. Shnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (temporal proximity revealed retaliatory intent of employer in FLSA dispute despite passage of time before dismissal). In addition, notwithstanding Defendant Chavez' statements to the contrary, there is evidence that he intended to accept Weaver's resignation because she did not support him in the 2001 mayoral election. Pl. Resp., Ex. 13 at 10-13. This creates a dispute over a material fact. Furthermore, "whether speech was a substantial motivating factor" in an adverse employment decision is a question of

fact for the jury. *Bass*, 308 F.3d at 1088. Therefore, it is inappropriate for the Court to rule on this issue in a summary judgment motion.

### b. Weaver's criticism of politically motivated personnel decisions was speech on a matter of public concern.

Next, the City argues that Weaver's criticism of personnel decisions was not a matter of public concern because it was a matter of personal interest to Weaver that related to internal disputes and working conditions. *See, e.g., Williamson v. City of Edmond*, 201 F.3d 450, 453-54 (10th Cir. 1999).

As discussed above, after the 2001 mayoral election, Weaver complained that the personnel decisions regarding Victor Valdez, Pete Dinelli and Don Harris were politically motivated decisions directed by Defendant Chavez. Weaver has presented evidence that Dinelli and Harris were hired because they were recommended by Defendant Chavez. Pl. Resp., Ex 1 at 22-23. Weaver was similarly critical of the hiring of Ben Chavez. She circulated e-mails that complained of his lack of experience and suggested that he was hired because of his connection to the mayor. When confronted by City Attorney White, Weaver expressed her concerns about a "forced hire." *Id*. at Ex 17. In sum, Weaver's comments about personnel decisions amount to complaints about favoritism and political patronage.

The Supreme Court has provided guidance as to what is and what is not a matter of public concern in *Connick v. Myers*. 461 U.S. 138. There the Supreme Court held that even speech that focuses on internal employment conditions and is made in the context of a personal dispute may be regarded as pertaining to a matter of public concern if it addresses important constitutional rights which society at large has an interest in protecting. In *Connick*, an assistant district

9

attorney distributed a questionnaire to her co-workers asking their opinions about several office policies. The Court held that the questions concerning confidence in supervisors, morale in the workplace, and the need for a grievance committee did not address matters of public concern, but rather were questions concerning internal office affairs. *Id*. at 148. However, the Court found that a question asking if the employees "ever feel pressured to work in political campaigns on behalf of office supported candidates" did address a matter of public concern. *Id*. at 149. Based on this holding, several courts have held that criticism of politically motivated personnel decisions is a matter of public concern. *See Williams v. Commonwealth of Kentucky*, 24 F.3d 1526, 1535 (6th Cir. 1994) (comments critical of political patronage employment practices addressed matters of public concern); *Aiken v. Rio Arriba Bd. of County Comm'rs*, 134 F.Supp.2d 1216, 1220 (D.N.M. 2000) (speech concerning cronyism and favoritism was a topic of public concern); *Garcia-Montoya v. State Treasurer's Office*, 130 N.M. 25, 37 (N.M. 2001) (complaints about politically motivated personnel actions were matters of public concern).

   Like the question concerning political pressure in *Connick*, Weaver's statements that were critical of political patronage employment practices addressed matters of public concern. "[T]here is a demonstrated interest in this country that government service should depend upon meritorious performance rather than political service." *Connick*, 461 US. at 149. Furthermore, "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials . . . clearly concerns matters of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988). For these reasons, Weaver's complaints about politically motivated personnel decisions related to matters of public concern, and summary judgment is denied as to this issue.

### c. The record is insufficient to support summary judgment on Weaver's comments about gender discrimination.

Last, Weaver contends that her criticism of gender discrimination within the City Legal Department related to maters of public concern.  In *Woodward v. City of Worland*, 977 F.2d 1392 (10th Cir. 1992), the court explained that a plaintiff's complaints that they were personally subjected to sexual harassment do not constitute a matter of public concern.  *Id.* at 1404. Subsequently, however, the Tenth Circuit has indicated that allegations of gender discrimination may involve matters of public concern where the complaints include allegations that other employees were subjected to harassment.  *See Wren v. Spulock*, 798 F.2d 1313, 1317 (10th Cir. 1987); *Worley v. Bd. of Cty Commissioners of Park City (abbrv.)*, 44 Fed. Appx. 892, 895 (10th Cir. 2002).  Therefore, Weaver's claim that her criticism of gender discrimination in the City Legal Department is a matter of public concern turns on whether that criticism included a discussion of the treatment of other employees.

Unfortunately, there is scant information before the Court on Weaver's claim of gender discrimination.  The complaint asserts that Weaver was an "outspoken critic" of gender discrimination at the City Legal Department, but there is a lack of evidence in the record on either side of the issue.  Because there is insufficient evidence before the Court on Weaver's claim of gender discrimination, and because evidentiary inferences weigh in Weaver's favor, summary judgment is inappropriate.

**2. Weaver's First Amendment interest outweighs the City's interest.**

The City asserts that, even if Weaver's speech was on a matter of public concern, the City's interest as an employer in promoting efficiency and preventing disruption outweighs Weaver's First Amendment interest.

Under the *Pickering* balancing test, the employee's First Amendment free speech rights are protected "unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." *Gardetto v. Mason*, 100 F.3d 803, 815 (10th Cir. 1996) (internal citations and quotations omitted). Relevant considerations include: "whether the [employee's speech] impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering*, 391 U.S. at 570-573).

Due to the government's interest in acting as an efficient employer, courts tend to give greater deference to "government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large." *Bd. of County Comm'rs. Wabaunsee County Kan. v. Umbehr*, 518 U.S. 668, 676 (1996) (quoting *Waters v. Churchill*, 511 U.S. 661, 673 (1994)(plurality opinion)). As a result, the government need not "allow events to unfold to the extent that the disruption of the [operation] and the destruction of the working relationships is manifest. . . ." *Connick*, 461 U.S. at 152. The employer cannot, however, "rely on purely speculative allegations that certain statements caused or will cause disruption. . . ." *Gardetto*, 100 F.3d at 815. "Instead the government must

articulate specific concerns about the impact of an employee's speech, and those concerns must be reasonable and formed in good faith." *Anderson v. McCotter*, 205 F.3d 1214, 1218 (10th Cir. 2000). Moreover, the Tenth Circuit has held that where a government employer has allowed an employee to continue to work after the protected expression, the government employer must show evidence of actual disruption. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1257-58 (10th Cir. 1998) (prediction of disruption not sufficient where employee was fired six months after the protected expression); *Barker v. City of Del City*, 215 F.3d 1134, 1140 (10th Cir. 2000) (evidence of actual disruption required where employee was fired several months after protected expression); *Kent v. Martin*, 252 F.3d 1141, 1145-46 (10th Cir. 2001) (same).

   The City asserts that Weaver's critical statements, discussions, and e-mails about the promotion of Victor Valdez and the hiring of Pete Dinelli, Don Harris, and Ben Chavez caused disruption in the office and the destruction of working relationships. In addition to the facts discussed above, the City also notes that Weaver did not respect Ben Chavez' confidentiality, and caused problems for him by allowing his supervisor to hear that he had been hired at the City Legal Department before any formal offer had been made. Ultimately, the City argues that City Attorney White and Defendant Chavez made the decision to dismiss Weaver in order to prevent future disruption and promote efficiency in the City Legal Department. Def. Mot. S.J., Ex B at 21, 24, Ex. L at 16.

   Several events, however, undermine this assertion. Weaver was warned by her immediate supervisor to stop talking about Ben Chavez. Aff. Karen Weaver ¶9 (Nov. 14, 2003). She complied with this instruction and continued to perform her duties at the City Legal Department without incident for the next six weeks. *Id.* During this time she was assigned an additional City

13

department to represent.  *Id*.  Further, Weaver has presented evidence in the form of an affidavit from Tom Miksch, a former co-worker at the City Legal Department, that the working relationships among the employees were not adversely affected by the discussions regarding personnel decisions.  Aff. Tom Miksch ¶4-5 (Nov. 10, 2003).

Although cognizant of the deference that must be given to government employer decisions, for the purposes of summary judgment, the City has not produced sufficient evidence to support a finding of reasonableness in regards to their claim of disruption.  *Cf. Gardetto*, 100 F.3d at 816.  The Court appreciates the disruptive potential of the speech in question.  However, success on a summary judgment motion, requires that the claim of disruption be reasonable and substantial, and not a "purely speculative allegation[]."  *Gardetto*, 100 F.3d at 815; *see also Umbehr*, 518 U.S. at 676; *Waters*, 511 U.S. at 677.  Moreover, in this case, as in *Kent*, it is counterintuitive to rely on a prediction of disruption stemming from Weaver's speech when the City's decision not to dismiss Weaver for six weeks raises a genuine issue of material fact regarding whether disruption actually occurred.  *See Kent*, 252 F.3d at 1145.  Therefore, summary judgment is denied on the issue of Weaver's First Amendment speech claim.

**B.  Weaver's First Amendment free association claim**

In her complaint, Weaver claims that she was improperly retaliated against for exercising her First Amendment right to associate with the political campaign of Bob Schwartz.  The City seeks summary judgment on this claim because it contends that political affiliation was not a motivating factor in Weaver's dismissal, and even if it was, she was subject to the *Elrod/Branti* policymaker exception.  *See Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980).

To establish a violation of her freedom of association rights Weaver must demonstrate that (1) political affiliation was a substantial motivating factor behind her dismissal, and (2) her position did not require political allegiance. *Jantzen*, 188 F.3d 1247. The City initially argues that Weaver's association with Bob Schwartz' campaign was not a motivating factor behind Weaver's dismissal. As discussed above, however, a review of the record reveals that for the purposes of summary judgment, there is sufficient evidence to connect Weaver's support of Bob Schwartz with her termination.

Next, the City contends that Weaver is subject to the *Elrod/Branti* exception. In *Branti* the Supreme Court recognized that "[i]f an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." 445 U.S. at 517. Thus, where political loyalty is necessary to the performance of a government employee's responsibilities, her political patronage dismissal is permitted. *See Green v. Henley*, 924 F.2d 185 (10th Cir. 1991) (citation omitted). "The test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Heideman v. Wirsing*, 7 F.3d 659, 663 (7th Cir. 1993) (quotation omitted).

Weaver argues that her support for Bob Schwartz should be analyzed under the *Pickering* balancing test for freedom of speech. While it is true that the same conduct can be analyzed as

both speech and association, for the purposes of Weaver's freedom of association claim (as opposed to her freedom of speech claim), the Court must apply *Elrod* and *Branti*.[3]

Turning to the record before the Court, the evidence shows that in her position as an Assistant City Attorney, Weaver was a policymaker subject to the *Elrod/Branti* exception. In her deposition, Weaver indicated that she was involved in drafting the public nuisance code and enforcement of zoning, the fire code and the building code. Def. Mot. S.J., Ex. C at 13, 49 (Oct. 9, 2003). Similarly, City Attorney White revealed, and it is uncontested, that Assistant City Attorneys must be versed in the legal implications of policy, and are frequently involved in the development of policy from the inception. *Id*. at Ex. A, 56-58. Clearly, these tasks involve "meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Heideman*, 7 F.3d at 663. For this reason, courts have consistently found that government attorneys are subject to removal for their political affiliation. *See, e.g., Gordon v. County of Rocland*, 110 F.3d 886, 890-92 (2d Cir. DATE) (assistant county attorney); *Finkelstein v. Barthelemy*, 678 F.Supp. 1255 (E.D. La. 1988) (assistant city attorney). In line with this authority, the Court holds that in her position as Assistant City Attorney, Weaver was subject to the *Elrod/Branti* exception. Therefore, the City is entitled to summary judgment on the freedom of association claim.

---

[3]As discussed above, Weaver's First Amendment free speech claim, also based on her support of candidate Schwartz, survives summary judgment under a separate *Pickering* analysis.

**C. Weaver's Title VII claim**

Weaver claims that she was subjected to discrimination on the basis of gender in violation of Title VII. The City, however, argues that Title VII does not apply to Weaver because she is not an "employee" within the definition of Title VII.

Title VII exempts certain public officials from its protections:

> The term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level, or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f). "The legislative history of this section states that Congress intended the exemption to be narrowly construed." *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982). Thus the exemption does not apply unless the facts clearly establish that the person is: (1) an elected public official; or (2) chosen by an official to be on his personal staff; or (3) appointed by an elected official to a policy making position; or (4) an immediate advisor to an elected official regarding the exercise of the constitutional or legal powers of the elected office. *Id*.

Weaver is neither an elected public official, nor a person chosen by such an official as a personal staff member. The City argues that she fits the latter two categories. Although the Mayor has influence over personnel decisions in the City Legal Department, formal authority to hire and dismiss Assistant City Attorneys rests with the Chief Administrative Officer of the City and the City Attorney. Pl. Resp., Ex. 13 at 4-5 (Nov. 25, 2003). Both of these positions are appointed rather than elected. Because Weaver was not appointed by an elected official, it follows that the third category does not apply.

Likewise, when the section is construed narrowly, the fourth category is also inapplicable. In *Geahart v. Oregon*, a decision cited favorably by the Tenth Circuit, *see Anderson*, 690 F.2d at 800, the court found that a deputy legislative counsel to the state legislature was not an immediate adviser with respect to the exercise of the constitutional or legal powers of the members of the state legislature. 410 F.Supp. 597, 600-601 (D. Or. 1976). In reaching this conclusion the court noted that the plaintiff's position called for direct assistance to legislators on legal powers and policy. Nevertheless, the court observed that although the deputy counsel was more than "just a law clerk," she was not a "first line adviser," and her responsibilities of bill drafting, research and providing advice did not necessitate close relationships with the legislators of the sort that Congress had in mind when drafting the exemption. *Id*. The court held that the government's evidence failed to show the necessary degree of closeness between the elected legislative officials and the plaintiff to establish the immediate relationship which Congress deemed necessary to fit within the limited exemption. *Id*.

Like the deputy legislative counsel in *Gearhart*, Weaver's position as Assistant City Attorney did not involve the close relationship with an elected official that Congress intended in drafting the exemption. Although Weaver provided advice directly to the Mayor and members of the City Counsel, she was not a "first line adviser" to these officials. *Id*. The Court holds that the City has not shown the level of evidence required to establish the intimate relationship between Weaver and the elected officials necessary to succeed on summary judgment.

Finally, the City cites *National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061 (2002), for the proposition that Weaver cannot recover for any acts of discrimination occurring

prior to January 2, 2002. Weaver's Title VII claim, however, was not fully briefed. As a result, at this time, the Court is unable to rule on this issue. Summary judgment is, therefore, denied.

### III.  CONCLUSION

For the reasons set forth above, the Court finds that summary judgment be granted in part and denied in part.

### IV.  ORDER

**IT IS ORDERED** that Defendants' Motion for summary judgment be DENIED as to Weaver's free speech and Title VII claims. It is further ordered that summary judgment be GRANTED for the free association claim.

**DATED** at Albuquerque this 26th day of February, 2004.

                                                          BRUCE D. BLACK
                                                          United States District Judge

**Attorneys:**

For Plaintiff:

    J. Douglas Foster
    Kathryn D. Lucero
    Foster Johnson McDonald Lucero Koinis, LLP
    P.O. Box 25706
    Albuquerque, NM 87125-5706

For Defendants:

    Deborah D. Wells
    Kennedy, Moulton &Wells, P.C.
    201 San Pedro NE, Bldg. 2, Ste. 105
    Albuquerque, NM 87110