IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**KAREN HOWDEN WEAVER,**

      Plaintiff,

v.                                              No. CIV 03-281 BB/LFG

**MARTIN CHAVEZ and the
CITY OF ALBUQUERQUE,**

      Defendants.

## MEMORANDUM OPINION
## AND
## ORDER DENYING NEW TRIAL

**THIS MATTER** is before the Court on *Plaintiff's Motion for Judgment as a Matter of Law and for a New Trial* [#75]. The Court having considered the briefs of counsel and being otherwise duly advised, finds the *Motion* is not well taken and it will be Denied.

### *Discussion*

Plaintiff argues this Court erred in granting Defendants' Rule 50 motion on the Plaintiff's claim she was terminated for supporting Bob Schwartz, who opposed Defendant Martin Chavez, in the Albuquerque Mayor's race. As Plaintiff now concedes, temporal proximity of the Mayor's action on terminating Plaintiff nine months after the election is insufficient in and of itself to submit that claim to the jury. *See*

*David v. City & County of Denver*, 101 F.3d 1344 (10th Cir. 1996); *Pugh v. City of Attica*, 259 F.3d 619 (7th Cir. 2001). At the argument on the Rule 50 motion during trial, Plaintiff's counsel conceded that temporal proximity was the only evidence he possessed to support this claim. Counsel would, however, now come forward with deposition evidence, that was not repeated at trial. Since Plaintiff did not elicit or otherwise attempt to introduce such testimony, it could not be considered on the Rule 50 motion, *Weisgram v. Marley Co.*, 528 U.S. 440, 453-4 (2000) (Rule 50 motion to be decided on properly admissible evidence). Such evidence cannot therefore be considered on the motion for new trial.

Plaintiff argues this Court erred in submitting the question of whether Plaintiff's speech caused disharmony or disruption in the office to the jury, citing *Wren v. Spurlock*, 798 F.2d 1313, 1317 (10th Cir. 1986). This Court finds nothing in *Wren* or in *Gardetto v. Mason*, 100 F.3d 803, 817 (10th Cir. 1996), indicating this question should not be submitted to the jury and, on its face, it appears the type of material fact typically committed to juries. *Gardetto* dictates that the Court determine: (1) whether the employee's speech is on a matter of public concern and, if so, (2) whether on balance the employer's interest in promoting the efficiency of the public service it performs should limit the employee's free speech. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968). This Court previously determined that Plaintiff's speech, insofar as it related to the hiring of unqualified attorneys at the City Attorney's office, was a matter of public

concern.[1] It is at this point where the jury's factual determination that any disruption caused by the speech was a motivating factor in the decision to terminate the Plaintiff intersects with the Court's role. If the protected speech was not a causative factor in the employment decision factually, there is no practical necessity to balance the relative rights of the parties. *Gardetto*, 100 F.3d at 809 (jury determines causation). As a factual matter, if Plaintiff's speech factually caused no disharmony or disruption, the public employer has little to balance in its favor as a legal matter.

In this case, the jury found Plaintiff's comments actually caused disharmony in the City Attorney's office. *See McGee v. South Pemiscott Sch. Dist. R-V*, 712 F.2d 339, 342 (8th Cir. 1983). Therefore this Court must now decide whether the values underlying the First Amendment dictate Plaintiff's speech was of sufficient public concern that the employer should be required to tolerate that disharmony.

Public attorneys do not have as broad a right to publicly criticize operation of their employer's legal operations as they would if they were merely citizens. *Giacalone v. Abrams*, 850 F.2d 79 (2d Cir. 1988). This is because the right to free speech must be balanced against the necessity of providing efficient public service. *Pickering*, 391 U.S. at 568. A government employee's statement that would be protected if made by an outside citizen can loose its protection if it causes sufficient disruption within the agency.

---

[1] In fact, although it may have been Plaintiff's opinion that the attorneys were hired because of their political connections, there is nothing in the record to support the conclusion they were not qualified.

*Wilbur v. Mahan*, 3 F.3d 214, 216 (7th Cir. 1993); *Bates v. Hunt*, 3 F.3d 374, 377 (11th Cir. 1993).  Some of the factors which may be considered in balancing the actual disruption against the value of the speech are:  (1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) the time, place, and manner of the speech; (4) whether the speech impeded the employee's ability to perform daily responsibilities; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general public.  *Rankin v. McPherson*, 483 U.S. 378 (1987).

  The conduct for Ms Weaver's termination revolved around her criticism of the hiring of other attorneys in the City Attorney's office.  This is ample evidence to support the jury's conclusion that Plaintiff's statements caused disharmony and contributed to making her difficult to supervise.  Specifically, Ms. Weaver complained that the hiring of Victor Valdez, Pete Dinelli, Don Harris, and Ben Chavez were politically motivated. Dinelli was hired as Plaintiff's supervisor and she challenged his credentials at their first introduction.  It is not surprising he found her impossible to supervise.  Since other supervisors had also previously requested Plaintiff be transferred for insubordination, this factor may not be entirely related toward the speech at issue, but it is certainly not an item which weighs in Plaintiff's favor.

**Personal loyalty and confidence is more evenly balanced. Plaintiff was loyal to and adequately represented her clients. Confidence is less clear. Two of her supervisors testified Plaintiff kept abbreviated work hours and openly read the newspaper at her desk. One supervisor, Ted Pearson, also testified Plaintiff often challenged him on work assignments and at one point they had to have a mediation over her work hours. Nor was Plaintiff someone her supervisors or colleagues had confidence in on the subject of teamwork or cooperation.**

**The context in which the dispute arose, then, is an attorney who was not on the personnel hiring committee vociferously criticizing personnel decisions to attorneys both inside and outside the office. It must be noted Plaintiff's position had no involvement in, or responsibility for, personnel or management of the City Attorney's office, and she was warned to stop agitating about personnel decisions. Nonetheless, Plaintiff used every opportunity to express her opinions on the qualifications of other lawyers she considered "political hacks."**

**If debate as to the background and qualifications was a matter on which debate was vital to informed decision making, Plaintiff's approach produced far more heat than light. Indeed, it was Plaintiff's inability to control the time, place, and manner of her speech regarding personnel issues that triggered her departure. Pete Dinelli testified he was walking down the office hallway when Plaintiff stormed out of her office, "used the F word and said, they have just hired Ben Chavez. Words to the effect, I can't**

5

believe that, he's a political hack and he's never tried a case." (Tr. at 204). In fact, the time, place, and manner of Plaintiff's criticism of the Chavez hiring was typical of the way she caused dissension. When the position for which Chavez was eventually hired came open, Plaintiff began to campaign for the appointment of her friend, Rosemary Cosgrove. When she heard Chavez was likely to get the job, she started sending e-mails to other lawyers, both within and outside the City Attorney's office. When this got back to Chavez's then supervisor at the Bernalillo County District Attorney's Office, it created an awkward situation for all involved. In this context it is clear Plaintiff exercised her right of free speech in a fashion which maximized disharmony but with, at most, minimal educational benefit as to what Plaintiff believed to be politically motivated hires. Such failure to follow proper time, place, and manner limits are an appropriate consideration in tipping the balance in favor of a governmental employer. *Twist v. Meese*, 854 F.2d 1421 (D.C. Cir. 1988); *Steinberg v. Thomas*, 659 F. Supp. 789 (D. Colo. 1987).

In balancing the interests of the present parties, the Court is persuaded by the result on analogous facts in *Connick v. Myers*, 461 U.S. 138 (1983). As in *Connick*, Plaintiff's focus was not to inform the public that the City Attorney's office was derelict in its governmental responsibilities, but rather to advance her own interest in seeing her friend, Rosemary Cosgrove, rehired and gaining ammunition for successive personnel decisions with which she disagreed. While, as in *Connick*, the general subject of

**Plaintiff's complaints, political patronage, could be a legitimate matter of public concern, the time, place, and manner of Plaintiff's objections, as well as her personal interest in a different decision in the Chavez case, tilt the balance in favor of the City Attorney's office. Therefore, the disruption and disharmony found to exist by the jury are not counterbalanced by any First Amendment values served by Plaintiff's criticism.** *Taylor v. Carmouche*, **214 F.3d 788 (7th Cir. 2000);** *Dartland v. Metropolitan Dade County*, **760 F. Supp. 196 (S.D. Fla. 1991);** *Kenna v. United States Dept. of Justice*, **727 F. Supp. 64 (D.N.H 1989).**

## O R D E R

**For the above stated reasons,** *Plaintiff's Motion for Judgment as a Matter of Law and for a New Trial* **is DENIED.**

**SO ORDERED this 22nd day of April, 2004.**

                                                              **BRUCE D. BLACK**
                                                              **United States District Judge**

**For Plaintiff:**
    J. Douglas Foster, Kathryn D. Lucero, FOSTER JOHNSON MCDONALD LUCERO KOINIS, Albuquerque, NM

**For Defendants:**
    Deborah D. Wells, KENNEDY MOULTON & WELLS, Albuquerque, NM